Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/25/2021 08:10 AM CDT

State of Nebraska, appellee, v.
Phillip P. Figures, appellant.
___ N.W.2d ___

Filed April 2, 2021.    No. S-19-1210.

1. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.
2. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Right to Counsel: Appeal and Error.** An appellate court reviews a trial court's rulings on motions to withdraw as counsel and motions to dismiss appointed counsel and appoint substitute counsel for an abuse of discretion.
5. **Right to Counsel.** When a defendant becomes dissatisfied with court-appointed counsel, unless he or she can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if he or she is competent to do so.
6. ____. An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel.
7. ____. Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel.
8. **Pretrial Procedure: Appeal and Error.** Unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.

9. **Trial: Juries: Appeal and Error.** The retention or rejection of a juror is a matter of discretion for the trial court, and this rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial; thus, the standard of review in a case involving discharge of a juror is whether the trial court abused its discretion.

10. **Trial: Juries.** A trial court has broad discretion to discharge a juror for cause so long as the court has a legal or factual basis to believe that the juror cannot serve as an impartial juror.

11. ____: ____. A court's decision to discharge a juror is an abuse of discretion if it is without factual support or for a legally irrelevant reason.

12. **Trial: Waiver.** Whether a defendant could and, in fact, did waive his or her right to attend all stages of his or her trial presents a question of law.

13. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

14. **Constitutional Law: Trial: Waiver.** A defendant's right to be present at trial may be waived, but any waiver of this right must be knowing and voluntary.

15. **Waiver: Words and Phrases.** A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.

16. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

17. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

18. **Evidence: Waiver: Appeal and Error.** A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.

19. **Trial: Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

20. **Trial: Evidence: Appeal and Error.** Erroneous admission of evidence is harmless error and does not require reversal if the evidence is

cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.

21. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion.

22. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

23. **Prosecuting Attorneys: Appeal and Error.** When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct.

24. **Trial: Prosecuting Attorneys: Appeal and Error.** If an appellate court concludes that a prosecutor's acts were misconduct, the court next considers whether the misconduct prejudiced the defendant's right to a fair trial.

25. **Prosecuting Attorneys: Juries.** A prosecutor should not make arguments calculated to appeal to the prejudices of the jury and should refrain from arguments which would divert the jury from its duty to decide the case on the evidence.

26. **Trial: Prosecuting Attorneys: Due Process.** Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infects the trial that the resulting conviction violates due process.

27. **Trial: Prosecuting Attorneys.** Whether prosecutorial misconduct is prejudicial depends largely upon the context of the trial as a whole.

28. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

29. **Criminal Law: Evidence: Confessions: Proof.** A voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but that it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation.

30. **Constitutional Law: Criminal Law: Jury Trials: Appeal and Error.** Whether cumulative error deprived a criminal defendant of his or her Sixth Amendment right to a trial by an impartial jury presents a question of law to be reviewed de novo.

31. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.

32. \_\_\_\_: \_\_\_\_. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

33. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

34. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

In this direct appeal, Phillip P. Figures challenges his convictions, pursuant to a jury verdict, for first degree murder and use of a firearm to commit a felony. Figures presents numerous assignments of error aimed at the trial court, the sufficiency of the evidence presented, and his allegedly ineffective trial counsel. Because we find no reversible error or abuse of discretion, we affirm.

## II. BACKGROUND

### 1. Charges

The State charged Figures with first degree murder, a Class IA felony,[1] and use of a firearm to commit a felony, a Class IC felony.[2] After Vanessa Figures, Figures' then spouse, provided a statement to police, he became a suspect in Fredrick Green's death in Omaha, Nebraska, on July 15, 2018. Charges soon followed.

Citing Vanessa's statement and other corroborating evidence, the State alleged that Figures ordered Rufus Dennis to kill Green to ensure that Green would not "snitch" to the police. According to Vanessa, Green was home when Figures and Dennis attempted to burglarize Green's house.

### 2. Trial Events

Figures was tried by a jury. The trial is summarized below. Additional facts pertinent to Figures' assigned errors are presented in the analysis.

#### (a) The State's Case

Vanessa served as the State's primary witness. The State corroborated Vanessa's testimony with investigators' testimony. The State also endeavored to disprove that other people may have committed the murder.

#### (i) Vanessa's Testimony

At the time of the murder, Vanessa lived with Figures as his wife. Before the trial, they divorced. In this section, we set forth the facts that she testified to at trial.

Recounting the days leading up to the murder, Vanessa paid for all the living expenses for Figures and herself. Figures was unemployed and did not contribute to their finances. Becoming upset with the financial situation, Vanessa demanded that Figures "get on [his] feet and help [her] pay these

---

[1] Neb. Rev. Stat. § 28-303 (Reissue 2016).

[2] Neb. Rev. Stat. § 28-1205 (Reissue 2016).

bills." Figures responded that he and Dennis planned on getting money by burglarizing Green's house, which, according to Figures, contained an estimated $50,000.

On the day of the murder, Figures left Vanessa's house in a rush after it was reported to him that Green had left his home. When Figures returned in the afternoon, his "adrenaline [was] going." Figures said, "'Rufus killed him . . . Fred Green, he killed him.'"

Figures explained that the burglary had gone wrong; Green was home. After Figures and Dennis entered through an unlocked door to Green's house, they found Green talking on a phone. Dennis pointed a gun at Green, who responded, "'This is Pooh, this is Pooh on the phone right now, it's cool . . . .'" Dennis' sister, Winnie Dennis, was known by the name "Pooh."

Figures forced Green into the basement. Figures then assaulted Green. Figures "tased him so much that . . . [t]he back flew off the taser and the batteries popped out." Figures recovered the taser's batteries, but not the back of the taser.

Figures then instructed Dennis to guard Green while Figures searched the home. Soon after, Dennis shot Green in the leg. Figures returned to the basement, and Dennis said, "'I got to kill him, he's gonna snitch . . . .'" Figures responded, "'Kill him then, cuz.'" Dennis shot Green three or four times, killing him. Before returning to Vanessa's house, Figures took $2,000 and a gold necklace from Green's house.

To cover his tracks, Figures buried the necklace in the yard of Vanessa's house, dumped the clothes he was wearing during the murder at a nearby carwash, changed his phone number, ensured that Dennis got rid of the murder weapon, and went to a state park.

In the days following the murder, Figures became "more and more paranoid," resulting in hostile behavior toward Vanessa. On July 26, 2018, Figures' temper apexed and he moved out of Vanessa's house. However, Figures continued to call and text Vanessa, demanding that she "keep [her] mouth shut."

Figures later returned to Vanessa's house and threatened, "'Don't make me kill you, Vanessa.'"

Fearing for her life, Vanessa retrieved Green's necklace from the yard and drove to the Papillion Police Department in Papillion, Nebraska. Vanessa gave a detailed statement to the Papillion Police Department and, later, to the Omaha Police Department, featuring the information she testified to at trial.

### (ii) Corroborating Evidence

The State amplified Vanessa's credibility by corroborating her testimony with the findings of its investigation. The State used a collection of law enforcement investigators to present the following: Winnie's jailhouse phone call, Green's autopsy report, the taser's back piece, video footage of Figures allegedly throwing away the clothes he was wearing during the murder, Figures' interviews with investigators, cell phone records, DNA evidence, and cell tower metadata showing Figures near Green's house around the time of the murder. The context surrounding each piece of evidence will be addressed in turn.

First, Investigator Wendi Dye explained that the front door to Green's house was unlocked, and she described the location of Green's body and the evidence collected at the scene. Additionally, two police officers, Patrick Dempsey and Beau Taylor, recounted how Vanessa's statement aided the investigation. For instance, Vanessa's statement alerted them to the taser's back piece, which was later recovered from Green's basement.

Next, a coroner discussed Green's autopsy. She explained that Green died from three gunshot wounds to the head and chest. Green also suffered a gunshot to the knee.

The State played a recorded phone call between Green and Winnie. Because Winnie was then incarcerated, the call was recorded by the correctional facility. In the recording, Green said, "Pooh's on the phone . . . Pooh, say something to your brother." Without hanging up the phone, Green stopped talking.

The State displayed video surveillance footage from a carwash. The footage allegedly showed Figures dumping the clothes he was wearing during the murder in the carwash's trash bin. However, investigators were unable to recover the clothes before a sanitation truck collected the bin's contents.

The State also played a redacted version of Figures' first interview with Investigator Ryan Hinsley. In the video, Figures claimed that he was putting a stereo system into his sister's car on the day of the murder. Also, Figures denied knowing Dennis or having any knowledge of the murder. However, Hinsley testified that, in a followup interview, Figures admitted that he knew who the "killer" was and that he could provide more information to the investigators. For instance, Figures claimed that the "killer" dumped Green's cell phone in a trash can, sewer, or other location, but would not be any more specific. Based on this information, investigators found Green's phone in a sewer drain near Vanessa's house.

Figures consented to a police search of his cell phone and provided a DNA sample. Police officer Oscar Dieguez downloaded the contents of Figures' phone and testified to its contents alongside the contents of Dennis' and Vanessa's cell phones. Dieguez pointed out that Figures' phone communicated with Dennis' phone multiple times before, during, and after the day of the murder. Dieguez also verified the threatening text messages that Figures sent to Vanessa.

A DNA analyst testified regarding the DNA testing of 17 items. Notably, Green's and another person's DNA were found on some of the items. While Figures was not a DNA contributor on a few items, testing of Figures' DNA was inconclusive on other items.

Finally, investigators used cell tower metadata to show that Figures was near Green's house during the time of the murder. Both a telecommunications representative and an agent with the Federal Bureau of Investigation reviewed metadata from Omaha cell towers and concluded that Figures' cell phone traveled near Green's house before and after the murder.

Because the phone was inactive during the time the State believed the murder occurred, neither witness could specifically pinpoint Figures' phone to be at Green's house. Another telecommunications representative confirmed that Figures changed his phone number following the murder.

### (iii) Other Witnesses' Testimony

The State presented three other witnesses: Cynthia Anderson, Green's girlfriend; Akil Williams, Green's business partner; and Jazmyne McMiller, Williams' girlfriend. These three witnesses collectively discovered Green's body, but none was able to place Figures at the crime scene. However, they established that Green's murder occurred between 11:45 a.m. and 1:30 p.m. on July 15, 2018.

McMiller arrived first at Green's house around 1:30 p.m., and when no one answered the door, she remained on the porch. Soon after, Williams met McMiller on the porch, where they stayed. Finally, Anderson returned to the house. Anderson lived at the property and had left around 11:45 a.m. to donate plasma. Anderson entered the house and became alarmed when she saw that her bedroom's dresser drawers were ransacked. McMiller and Williams then went inside the house, and Anderson discovered Green's body in the basement.

Anderson called the 911 emergency dispatch service and tried to resuscitate Green, but McMiller and Williams immediately left the property. Williams testified that they left because he did not want to risk being around law enforcement while possessing a gun. After Williams hid the gun, McMiller and Williams returned to Green's house, but law enforcement had arrived. All three witnesses complied with investigators and subjected themselves to interviews and DNA requests.

### (b) Defense Evidence

Figures raised his defense during his cross-examination of the State's witnesses—claiming that Williams murdered Green. Figures elicited testimony that Green and Williams sold drugs together and that Williams owed Green $8,000. Figures

highlighted that Williams fled the scene after Green's body was discovered instead of trying to resuscitate him. Figures also brought out that investigators declined to test Williams' DNA against Green's items. Finally, Figures presented video camera footage from Vanessa's doorbell camera that showed he was not carrying the clothes that Vanessa had told police he wore to commit the crime. Figures rested without testifying or presenting his own witnesses.

### 3. Verdict and Sentences

The jury found Figures guilty of first degree murder and use of a firearm to commit a felony. The court sentenced Figures to life imprisonment for the murder conviction and 40 to 50 years' imprisonment for the firearm conviction, to be served consecutively, with 476 days' credit for time served on the latter sentence.

Represented by new counsel, Figures filed a timely appeal.

## III. ASSIGNMENTS OF ERROR

Figures assigns 10 errors with multiple subparts. For purposes of clarity, we have reordered and consolidated the assignments.

Two assignments address pretrial hearings. Figures attacks orders overruling his motions for appointment of successor trial counsel and Figures' trial counsels' motions to withdraw. Figures also claims the court abused its discretion by denying Figures' request to be provided physical copies of discovery while incarcerated.

Four assignments speak to trial events. Figures asserts that the court abused its discretion by sustaining the State's motion to dismiss the "jury's only African-American juror," erred by allowing the State to present a portion of its case in chief in Figures' absence, erred by permitting the State to introduce inadmissible hearsay testimony and character evidence over Figures' objections, and erred in overruling his motion for a mistrial.

Two assignments speak generally. Figures assigns that the evidence was insufficient to support his convictions. He also raises an assignment of cumulative error.

[1] Finally, Figures assigns that he received ineffective assistance of trial counsel. We have held that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[3] We quote Figures' assignment of errors in this section. However, for purposes of clarity, we will reorder and consolidate these assignments in the analysis.

Figures assigns that his trial counsel failed

> 1) to seek a trial continuance and/or to object/to seek to exclude witnesses that the State endorsed in its "Amended Motion For Leave To Endorse," dated July 18, 2019; 2) to seek a continuance and/or to object/to seek to exclude digital forensic reports and/or to obtain an expert to counter said reports and related testimony; 3) to subject Vanessa to rigorous cross-examination; 4) to subject Williams to rigorous cross-examination; 5) to move the Court for a sequestration order and prohibition order pursuant to *State v. Hess* . . . ; 6) to subject Dye to rigorous cross-examination; 7) to posit the proper foundation objection to Hinsley's testimony/to subject Hinsley to rigorous cross-examination; 8) to renew a pre-trial motion in limine/posit the proper objections to Dieguez's "expert" testimony; 9) to file a motion for new trial pursuant to § 29-2101; 10) to investigate Figures' alibi witnesses and to present an alibi defense when so instructed; 11) to posit proper objections to Dempsey and Taylor's "expert" testimony; [and] 12) to secure DNA/GSR testing of Williams' sample.

With the exception of the ninth instance, the State concedes that the assignments of deficient conduct were sufficiently

---

[3] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

specific. Based on this concession, we do not consider the specificity of the other assignments further.

## IV. STANDARD OF REVIEW

[2,3] In an appeal of a criminal conviction, we review the evidence in a light most favorable to the prosecution.[4] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[5] Additional standards of review will be set forth in the analysis.

## V. ANALYSIS

### 1. Motion for New Counsel

Figures first assigns that the court abused its discretion by denying his motions for appointment of successor trial counsel and, correspondingly, by denying Figures' trial counsel's and cocounsel's motion to withdraw. Figures asserts that his motions were based upon his trial counsel's incompetence and not rooted in mere dissatisfaction. Additionally, Figures argues that the court applied the wrong legal standard, claiming that the court applied an "exceptional circumstances" standard instead of a "good cause" standard.

### (a) Additional Facts

Because Figures was indigent, counsel was appointed. However, Figures repeatedly moved the court to allow his court-appointed counsel to withdraw.

First, Figures' trial counsel, at Figures' request, filed a motion on September 24, 2018. In a hearing on the motion, Figures explained that (1) he did not agree to his specific counsel representing him, (2) he was not comfortable with his attorney, (3) he wanted an attorney with more experience with murder trials, and (4) he disagreed with his counsel's

---

[4] *State v. Dehning*, 296 Neb. 537, 894 N.W.2d 331 (2017).

[5] *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020).

defense strategy. The court denied Figures' motion, finding that "[Figures had not] shown good cause, and mere dissatisfaction [was] not sufficient." Figures then filed a document pro se on October 3, reciting the arguments he presented at the hearing and also claiming that his trial counsel should be removed because (1) his trial counsel was "hired [and] picked" by the prosecution, (2) he does not trust his counsel, (3) counsel was not communicating with him, and (4) trial counsel was not following his instructions. No hearing was held on this pro se document.

In response to Figures' filing another document pro se on May 6, 2019, Figures' trial counsel again filed a motion to withdraw on May 23. At a hearing regarding the motion, Figures reiterated his arguments from the September 2018 hearing and his pro se document. He added that his counsel failed to explain the ramifications of waiving his right to a speedy trial and that he could not review the entire discovery because of his poor working relationship with counsel. Figures also declined to represent himself pro se and explained that he could not afford private counsel.

The district court overruled Figures' motions, finding that Figures did not show good cause for removal of his counsel. While the court referenced "exceptional circumstances" when it explained to Figures what conditions would warrant new counsel, it ultimately cited *State v. Bratton*[6] and ruled that "[it did not] find that [there was] good cause shown for appointment of new counsel." Figures' counsel noted in a later hearing on June 20, 2019, that Figures' relationship with him had "significantly improved."

Figures' cocounsel also moved to withdraw from the case on July 17, 2019. However, counsel's basis for the motion was that he had taken a new job in another state. Because cocounsel's motion was on the eve of trial, the court overruled his motion.

---

[6] *State v. Bratton*, 187 Neb. 460, 191 N.W.2d 612 (1971).

### (b) Standard of Review

[4] An appellate court reviews a trial court's rulings on motions to withdraw as counsel and motions to dismiss appointed counsel and appoint substitute counsel for an abuse of discretion.[7]

### (c) Discussion

[5-7] When a defendant becomes dissatisfied with court-appointed counsel, unless he or she can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if he or she is competent to do so.[8] An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel.[9] Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel.[10]

Because Figures declined to proceed pro se or retain private counsel, Figures had to show that his trial counsel was incompetent. Figures cited evidence that he disliked his trial counsel and that Figures did not have a good working relationship with him.

The district court found that Figures failed to prove that his trial counsel was incompetent. The court applied the correct standard and did not abuse its discretion.

### 2. Discovery

Figures next assigns that the court abused its discretion by denying his request to obtain his own physical copies of discovery material. Figures asserts the court failed to base its decision on Neb. Rev. Stat. § 29-1912 (Reissue 2016). Figures also argues he could not properly review discovery

---

[7] See, *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020); *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).

[8] *Weathers, supra* note 7.

[9] *Id.*

[10] *Id.*

because of his "dysfunctional" relationship with his trial counsel.[11]

### (a) Additional Facts

Figures requested copies of discovery that he could keep in his possession, instead of reviewing discovery with his attorney. Figures was incarcerated for the entirety of the proceedings. While not in the record, the State's brief explained that Figures' counsel followed local practice and agreed to not provide physical copies of the discovery to Figures in exchange for the State providing more discovery than was required by statute. At oral arguments, Figures' appellate counsel conceded that "traditionally, the way discovery is disseminated to a criminal defendant is through counsel." The court denied Figures' request.

### (b) Standard of Review

[8] Unless granted as a matter of right under the Constitution or other law, discovery is within the discretion of a trial court, whose ruling will be upheld on appeal unless the trial court has abused its discretion.[12]

### (c) Discussion

Section 29-1912 "permit[s] the defendant to inspect and copy or photograph [discovery]," but does not mandate that the State provide physical copies of discovery for a defendant to possess while incarcerated. Figures' counsel possessed the physical copies of the discovery, which Figures could review. Therefore, we find that the court did not abuse its discretion in denying his request.

### 3. JUROR DISMISSAL

Figures next assigns that the court abused its discretion by sustaining the State's motion to strike the "jury's only

---

[11] Brief for appellant at 34.

[12] *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016).

African-American juror." Figures argues that the court's ruling was not supported by the record and that the State did not articulate a race-neutral reason pursuant to *Batson v. Kentucky*[13] for discharging the juror. However, the juror's removal did not result from a peremptory challenge by the State; rather, it occurred during the course of the trial.

### (a) Additional Facts

In the middle of the trial, the State brought to the court's attention that a juror may have had improper communications with Figures' associate. The court heard from two witnesses and the juror. The two witnesses testified that the day before, they saw the juror talking with a man in the courthouse, which they recognized as being Figures' associate.

The juror initially denied talking to anyone. However, the juror returned to the courtroom a short time later and modified her testimony. The juror then testified that a man had approached her, but she thought he was just trying to "hit on [her]," so she ignored him.

The State moved to strike the juror, citing the witnesses' and juror's testimony. The court sustained the State's motion over Figures' objection. In its ruling, the court noted that "there was quite a discrepancy in the [juror's] testimony" about "conduct not even 24 hours ago."

### (b) Standard of Review

[9] The retention or rejection of a juror is a matter of discretion for the trial court, and this rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial; thus, the standard of review in a case involving discharge of a juror is whether the trial court abused its discretion.[14]

---

[13] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d. 69 (1986).

[14] *State v. Huff*, 298 Neb. 522, 905 N.W.2d 59 (2017).

(c) Discussion

Neb. Rev. Stat. § 29-2004(2) (Reissue 2016) authorizes a court to disqualify a juror for cause after the juror has been sworn in. Section 29-2004(2) has been amended since Figures' trial, but neither version of § 29-2004(2) identifies the reasons for which a juror might be discharged.[15]

[10,11] Case law, however, establishes that a trial court has broad discretion to discharge a juror for cause so long as the court has a legal or factual basis to believe that the juror cannot serve as an impartial juror.[16] Therefore, a court's decision to discharge a juror is an abuse of discretion if it is without factual support or for a legally irrelevant reason.[17]

We find that the court did not abuse its discretion in discharging the juror. Noting that there were "discrepanc[ies]" in the juror's testimony, the court had a factual basis to believe that the juror would not be able to serve as an impartial juror. Additionally, we find no merit to Figures' claim that the juror's dismissal violated *Batson*.[18]

4. Figures' Absence

Figures assigns that the court erred by allowing the State to present a portion of its case in chief in Figures' absence. Figures argues that the court deprived him of his right to be present in the courtroom at every stage of his trial.

(a) Additional Facts

After the African-American juror was excused, Figures left the courtroom for the remainder of the day, declining to be present for the opening portion of Dye's direct examination. The court allowed the State to continue to present witnesses. Figures was not deprived of his opportunity to

---

[15] See, generally, *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009).

[16] See, e.g., *Huff, supra* note 14.

[17] See *id.*

[18] *Batson, supra* note 13.

cross-examine Dye, and Figures' counsel was present during the entire testimony.

### (b) Standard of Review

[12,13] Whether a defendant could and, in fact, did waive his or her right to attend all stages of his or her trial presents a question of law.[19] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[20]

### (c) Discussion

[14] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution and Neb. Const. art I, § 11, provide for the accused's right to be present in the courtroom at every stage of the trial.[21] Neb. Rev. Stat. § 29-2001 (Cum. Supp. 2020) provides: "No person indicted for a felony shall be tried unless personally present during the trial." However, a defendant's right to be present at trial may be waived, but any waiver of this right must be knowing and voluntary.[22]

[15] A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.[23] We have explained that if a defendant could "'prevent the completion of the trial by voluntarily absenting himself, and thus tie the hands of justice, he would be permitted to take advantage of his own wrong.'"[24]

Figures voluntarily and intentionally waived his right to be present during a portion of the trial. Figures left the

---

[19] *State v. Warlick, ante* p. 656, ___ N.W.2d ___ (2021).

[20] *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020).

[21] *Warlick, supra* note 19.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 677-78, ___ N.W.2d at ___ (quoting *Scott v. State*, 113 Neb. 657, 204 N.W. 381 (1925)).

courtroom on his own accord. We will not allow Figures to take advantage of his own conduct. Figures' claim has no merit.

### 5. Evidentiary Rulings

Combining two of Figures' assignments, Figures assigns that the court abused its discretion or erred by permitting the State to introduce two pieces of inadmissible evidence: character evidence and hearsay. First, Figures argues that the court erred by allowing the State to elicit testimony of a failed drug deal and Figures' threats toward Vanessa. Next, Figures asserts that investigators' testimony regarding Vanessa's statement to law enforcement was inadmissible hearsay. Each will be addressed in turn.

### (a) Standard of Review

[16,17] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[25] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[26]

[18] A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection.[27]

[19,20] Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[28] Erroneous admission of

---

[25] *Martinez, supra* note 5.

[26] *Id.*

[27] *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020).

[28] *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.[29]

### (b) Alleged Character Evidence

#### (i) Additional Facts

During pretrial hearings and a colloquy immediately before opening arguments were presented at trial, the parties disputed the admissibility of two of Figures' actions after the murder: a failed drug deal and threats toward Vanessa. After the murder, Figures had a verbal dispute with Vanessa's aunt at Vanessa's house. The State alleged that the dispute originated from a failed drug deal. Additionally, as recounted earlier, Figures repeatedly threatened Vanessa, demanding that she not tell anyone about his involvement in Green's death.

Figures sought to exclude evidence of his actions pursuant to Neb. Rev. Stat. § 27-404(2) (Reissue 2016). Figures argued that the State planned to use this evidence to show his bad character and propensity to commit the murder.

The State refuted Figures' arguments. However, because the State never brought up the failed drug deal at trial, the only evidence that reached the jury was Figures' threats toward Vanessa. Citing *State v. Parnell*,[30] the State argued that Figures made terroristic threats toward Vanessa, which were inextricably intertwined with the charged offense and fell outside § 27-404(2).

The district court agreed with the State, allowing Vanessa to testify about Figures' threats toward her. While Figures had a continuous objection regarding the failed drug deal, he did not object to Vanessa's testimony regarding the threats at trial.

#### (ii) Discussion

For separate reasons, we dispose of this assignment without addressing its merits. Because the State never presented the

---

[29] *Id.*

[30] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

alleged drug deal to the jury, it could not generate prejudicial error. Regarding Vanessa's testimony about Figures' threats, Figures failed to object to this testimony at trial. Therefore, Figures waived his right to assert prejudicial error concerning the evidence of Figures' threats.

### (c) Hearsay

### (i) Additional Facts

The State elicited testimony from both Dempsey and Taylor, police officers who took Vanessa's statement. They recited Vanessa's statements to law enforcement, including what Figures told Vanessa. Figures objected, based upon hearsay. The court overruled the objection, but noted Figures' continuing objection.

### (ii) Discussion

The court erred by allowing the officers to testify to inadmissible hearsay. The officers testified about statements which were made out of court and used for the truth of the matter asserted.[31] While Vanessa's statements regarding what Figures told her are admissible as opposing party statements, it does not justify allowing the officers to testify regarding Vanessa's own statements.[32]

The court's error, however, was harmless. The officers' testimony was cumulative to Vanessa's testimony earlier in the trial, and the State presented other relevant evidence that supported the jury's verdict. We will not reverse based upon this harmless error.

### 6. MOTION FOR MISTRIAL

Figures next assigns the court erred in overruling his motion for a mistrial. Figures argues that he was deprived of a fair trial, because prosecutorial misconduct misled the jury as to the evidence it could consider.

---

[31] See Neb. Rev. Stat. § 27-801(3) (Reissue 2016).

[32] See § 27-801(4)(b).

(a) Additional Facts

During the trial, the State stipulated to the admissibility of a video clip from Vanessa's doorbell video camera (exhibit 372). However, the State noted that, in response, it would play the rest of the camera's footage (exhibit 373) to argue that the time stamps were altered. Figures stipulated to the admissibility of exhibit 373.

During Hinsley's cross-examination, Figures offered into evidence and played exhibit 372 to the jury. On Hinsley's redirect, the State offered exhibit 373 "not to go back to the jury, but just for purposes of the record and then ask[ed] . . . permission to, for demonstrative purposes, illustrate a few that will assist the detective in explaining his testimony." The State then played a portion of exhibit 373 to the jury in order for Hinsley to assert that the doorbell footages' time stamps were altered.

The parties readdressed these exhibits in their closing arguments. First, Figures asserted that exhibit 372 contradicted Vanessa's testimony that Figures was carrying the clothes he wore to Green's house on the day of the murder. Figures then argued that because the State could not refute exhibit 372, it did not want the jury to see the exhibit.

The State objected to Figures' argument, asserting that it misstated the evidence on the record. The court did not explicitly rule on the State's objection, but Figures amended his argument to focus on the States' claim that exhibit 372's time stamp was manipulated.

During rebuttal, the State stated that "[i]t's one thing to zealously represent your client, but it's quite another thing to come up here and make the implications that you just heard over the last hour." The State accused Figures of mischaracterizing exhibit 372 as evidence that the State wanted to "hide." Referencing the time stamp manipulation, the State explained that it presented neither exhibit 372 nor exhibit 373 during Hinsley's direct examination, because it did not believe it had the foundation to offer it.

After the jury was sent to deliberate, Figures moved for a mistrial. Figures argued that the jury was instructed that it could only consider evidence that had been properly admitted. Figures claimed the jury was under the impression that exhibit 372, which was properly admitted, could not be considered based upon the parties' interactions at closing statements and the State's rebuttal statement. Figures concluded that he did not have a fair trial, because the entire proceedings were tainted. Explaining that "[it did not] think we've even gotten close to that," the court overruled Figures' motion for a mistrial.

### (b) Standard of Review

[21,22] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion.[33] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[34]

### (c) Discussion

[23,24] When considering a claim of prosecutorial misconduct, we first consider whether the prosecutor's acts constitute misconduct.[35] If we conclude that a prosecutor's acts were misconduct, we next consider whether the misconduct prejudiced the defendant's right to a fair trial.[36]

We have acknowledged that "prosecutorial misconduct" cannot be neatly defined, but we have said that generally, it encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine

---

[33] *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016).

[34] *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017).

[35] *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018).

[36] *Id.*

a defendant's right to a fair trial.[37] We have also said that a prosecutor's conduct that does not mislead and unduly influence the jury is not misconduct.[38]

We disagree with Figures' assertion that the State made baseless objections that misled the jury. The record shows that at a sidebar, the parties had a genuine dispute regarding which exhibits were not offered to the jury. The court grappled with that issue as well. We do not find the State's objections constituted prosecutorial misconduct.

[25] However, we are concerned with the State's rebuttal statement. We have ruled that a prosecutor should not make arguments calculated to appeal to the prejudices of the jury and should refrain from arguments which would divert the jury from its duty to decide the case on the evidence.[39] We recognize that hyperbole in closing arguments is hardly rare and that juries should be given credit for the ability to filter out oratorical flourishes.[40] But comments by prosecutors to the effect that a defense attorney's job is to mislead the jury in order to garner an acquittal for his or her client is not only distasteful but borders on being unethical and such comments only serve to denigrate the legal profession in the eyes of the jury and, consequently, the public at large.[41]

Here, the State stated that "[i]t's one thing to zealously represent your client, but it's quite another thing to come up here and make the implications that you just heard over the last hour." Here, the State never explicitly argued that Figures was lying or trying to mislead the jury. But the implication

---

[37] *Id.*

[38] *Id.*

[39] See *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[40] See *id.*

[41] See *id.*

of the State's argument reaches the extreme end of permissible conduct.

[26,27] However, even if we assume that the State's argument crossed the line into prosecutorial misconduct, it does not warrant reversal because it did not prejudice Figures. Prosecutorial misconduct prejudices a defendant's right to a fair trial when the misconduct so infects the trial that the resulting conviction violates due process.[42] Whether prosecutorial misconduct is prejudicial depends largely upon the context of the trial as a whole.[43] In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, we consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether defense counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the conviction.[44]

Because the State's conduct was not prejudicial and did not violate Figures' right to a fair trial, we find that the court did not abuse its discretion in overruling Figures' motion for a mistrial. The single comment was made at the end of the trial and was overshadowed by the plenitude of evidence supporting Figures' conviction. It was within the court's discretion to find that the jury could filter out the State's hyperbole and render a verdict based upon the evidence presented.

### 7. Sufficiency of Evidence

Figures argues that the evidence presented was insufficient to support his convictions. Citing *State v. Scott*,[45] Figures claims there was insufficient corroboration of Figures' confession to Vanessa.

---

[42] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[43] *Hernandez, supra* note 35.

[44] *Id.*

[45] See *State v. Scott*, 200 Neb. 265, 263 N.W.2d 659 (1978).

### (a) Standard of Review

[28] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[46]

### (b) Discussion

[29] *Scott* mandates that a voluntary confession is insufficient, standing alone, to prove that a crime has been committed, but that it is competent evidence of that fact and may, with slight corroboration, establish the corpus delicti as well as the defendant's guilty participation.[47]

The State presented sufficient corroborating evidence for the jury to convict Figures. The State presented evidence regarding Green's cause of death, the condition of the crime scene, a recorded phone call, tangible physical evidence, forensics, cell phone data, and cell tower metadata. This evidence corroborated Figures' confession to Vanessa. Figures' claim has no merit.

### 8. Accumulation of Errors

Figures next argues that the aggregated errors in Figures' case warrants reversal.

### (a) Standard of Review

[30] Whether cumulative error deprived a criminal defendant of his or her Sixth Amendment right to a trial by an impartial jury presents a question of law to be reviewed de novo.[48]

---

[46] See *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

[47] See *Scott, supra* note 45.

[48] *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016).

### (b) Discussion

Because we already determined that the errors assigned by Figures were either meritless or inconsequential, we decline to reverse based on the cumulative error doctrine. It has no application here.

## 9. Ineffective Assistance
## of Counsel

Finally, Figures presents 12 assignments of ineffective assistance of counsel. Figures' appellate counsel is different than his trial counsel. For purposes of clarity, we have reordered and consolidated some of Figures' assignments.

### (a) Standard of Review

[31-33] Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law.[49] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[50] When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[51]

[34] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[52]

---

[49] *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020).

[50] *Id.*

[51] *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019).

[52] *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

### (b) Specific Assignments

#### (i) Witness List

Figures starts his ineffective assistance of counsel assignments by arguing that his trial counsel was defective by (1) not seeking a trial continuance after the State amended its witness list or (2) not objecting to and seeking to exclude newly added witnesses from testifying at trial. Both parts of Figures' claim will be addressed in turn.

First, the record is insufficient to address why Figures' trial counsel did not move for a continuance. While Figures' trial counsel objected to the State's motion, a continuance was never raised. The record does not explain why Figures' trial counsel did not do so.

Next, Figures' trial counsel was not deficient by not objecting and seeking to exclude the witnesses at trial. Because the State amended its witness list more than 30 days before trial, the court overruled Figures' pretrial objection.[53] It would have been futile to object again at trial.

#### (ii) Digital Forensic Reports

Figures argues his trial counsel was defective by (1) not seeking a trial continuance after the State disclosed the digital forensic reports, (2) not objecting to and seeking to exclude the reports at trial, and (3) failing to obtain an expert to refute the reports. Each part of the claim will be addressed in turn.

The record is insufficient to address the first part of Figures' claim. The record does not detail why Figures' trial counsel did not move for a continuance. At the hearing following the State's disclosure of the digital forensic reports, Figures' trial counsel explicitly stated that Figures was not requesting a continuance at that time, but he did not provide an explanation why.

Figures' trial counsel was not deficient for failing to object to and seek to exclude the contents of the digital forensic

---

[53] See Neb. Rev. Stat. § 29-1602 (Reissue 2016).

reports at trial. Because the timely reports were admissible evidence, the court overruled Figures' pretrial motion to preclude the reports, based upon alleged late disclosure, and it would have been futile to object again at trial.[54]

Finally, the record does not provide the necessary context regarding obtaining or presenting a digital forensic expert. The court granted Figures' motion to obtain an expert. However, the record does not explain whether Figures did in fact obtain an expert and, if so, why Figures did not present the expert to counter the digital forensic reports.

### (iii) Witness Testimony

Figures also assigns that his trial counsel deficiently cross-examined witnesses and failed to raise proper objections to witnesses' testimony at trial. Each claim will be addressed in turn.

### a. Vanessa

Figures assigns his trial counsel ineffectively cross-examined Vanessa by not inquiring into Vanessa's inconsistent statements to law enforcement, her delay in reporting the crime, and whether she had entered into an agreement to testify in lieu of criminal prosecution. The record is devoid as to why Figures' trial counsel chose not to ask Vanessa particular questions. We agree with the State that the record is insufficient to address this assignment.

### b. Williams

Figures next assigns that his trial counsel ineffectively cross-examined Williams by not asking about Williams' prior inconsistent statements to law enforcement, by not asking about Williams' drug use on the day of the murder, and by failing to obtain Williams' criminal history before his testimony. Figures also asserts that his trial counsel "los[t] control

---

[54] See *Crowder v. Aurora Co-op Elev. Co.*, 223 Neb. 704, 393 N.W.2d 250 (1986).

of Williams' testimony."[55] Each claim will be addressed in turn.

First, the record is insufficient to explain why Figures' trial counsel declined to ask Williams about his prior inconsistent statements and marijuana use. Additionally, the record does not establish whether Figures suffered prejudice by his trial counsel's failure to obtain Williams' criminal record before trial. However, the record is sufficient to address Figures' trial counsel's "losing control of Williams' testimony."[56]

We disagree with Figures' characterization of his trial counsel's interaction with Williams. While Williams provided hostile commentary throughout his cross-examination, Figures' trial counsel sufficiently bypassed Williams' aggression, objected to nonresponsive testimony, and remained focused on extracting testimony from Williams. Figures' claim has no merit.

Finally, Figures argues, but fails to assign, that his trial counsel was deficient by not objecting to relevance and improper witness bolstering on Williams' redirect examination.[57] Because Figures failed to assign error on these matters, we decline to address them.[58]

### c. Dye

Figures also assigns that his trial counsel ineffectively cross-examined Dye by failing to inquire into her presence in the courtroom during Williams' testimony, how she learned of the contents of Williams' testimony, and her investigation of Williams as a suspect in Green's homicide. The record again lacks the detail necessary to address Figures' claim, because it does not explain why Figures' trial counsel declined to ask Dye particular questions. Therefore, we cannot resolve this claim.

---

[55] See brief for appellant at 67.

[56] See *id.*

[57] See Neb. Rev. Stat. §§ 27-401, 27-402, and 27-608 (Reissue 2016).

[58] See *McGuire, supra* note 52.

In Figures' brief, he also argues, but fails to assign, that his trial counsel was ineffective for failing to object to multiple portions of Dye's testimony, failing to offer pertinent motions, and eliciting evidence from Dye that contradicted Figures' defense. Because Figures' failed to assign error on these matters, we decline to address them.[59]

### d. Hinsley

Figures next assigns that his trial counsel was ineffective by failing to make a foundational objection to exhibit 373 and moving to strike to Hinsley's related testimony. Figures' assignment mischaracterizes the record. As discussed earlier, Figures and the State entered into stipulations regarding the doorbell footage. The State stipulated to Figures' playing exhibit 372 with the understanding that it would play exhibit 373 to argue that the time stamps were manipulated. Figures' trial counsel agreed to this arrangement. Consequently, Figures was able to play exhibit 372 without the State's making a foundational objection.

In this appeal, Figures now argues that his trial counsel should have presented a foundational objection to exhibit 373—from which exhibit 372 originates. The State's sole purpose in playing exhibit 373 was to explain to the jury that it did not present the exhibit earlier because it did not believe there was sufficient foundation to present it. Figures' objection would have proved the State was right and discredited exhibit 372, which he presented earlier. Therefore, Figures' trial counsel was not deficient.

Figures also argues, but fails to assign, that his trial counsel was ineffective by eliciting incriminating testimony against Figures from Hinsley. We likewise decline to address this argument, because Figures failed to properly assign error.[60]

---

[59] See *id.*

[60] See *id.*

### e. Dieguez

Figures assigns that his trial counsel was ineffective by failing to (1) renew his pretrial motion to preclude Dieguez from testifying; (2) object to Dieguez' testimony and the exhibits that Dieguez used during his testimony for being irrelevant, improper expert witness testimony, hearsay, and having a probative value that was substantially outweighed by the danger of unfair prejudice; and (3) object to the exhibits for violating *Crowder v. Aurora Co-op. Elevator Co.*[61] Each claim will be addressed in turn.

First, Figures' claim that his trial counsel should have renewed his pretrial motion to preclude Dieguez from testifying has no merit. Figures argued in his pretrial motion that § 29-1602 required that the State disclose that Dieguez would serve as an expert witness. However, while statute mandates that the State endorse a list of witnesses known to it, it does not require that the State highlight a witness' expert status.[62]

Next, Figures could not have properly objected to Dieguez' testimony or the exhibits presented. Dieguez' testimony and exhibits discussed relevant statements made by Figures and had a probative value that was not outweighed by any unfair prejudice. Also, the exhibits did not violate *Crowder*.[63] The exhibits were a PowerPoint presentation of the digital forensic reports of Figures', Vanessa's, and Dennis' phones. The documents summarized by the exhibits were identifiable, admissible, voluminous, and previously disclosed to Figures. Figures' claim has no merit.

Figures argues, but fails to assign, that his trial counsel ineffectively cross-examined Dieguez. Because Figures failed to assign error, we decline to address the argument.[64]

---

[61] See § 27-401 and Neb. Rev. Stat. §§ 27-403, 27-602, 27-702, 27-705, 27-802, and 27-1006 (Reissue 2016); *Crowder, supra* note 54.

[62] See § 29-1602.

[63] See *Crowder, supra* note 54.

[64] See *McGuire, supra* note 52.

### f. Dempsey and Taylor

Figures assigns that his trial counsel was ineffective by failing to object to Dempsey's and Taylor's "expert" testimony. However, Figures argues that his trial counsel was ineffective by failing to object to the officers' testimony regarding Vanessa's statements to them as hearsay and needlessly cumulative evidence. Figures' arguments differ from his assignment, and therefore, we decline to address them.[65]

### (iv) Sequestration of Witnesses

Figures also assigns his trial counsel was ineffective by failing to move for the witnesses to be sequestered. Figures argues his trial counsel's failure to move for sequestration led to the State's witnesses coordinating their testimony.

The record is insufficient to address Figures' assignment. The record does not provide any evidence that the witnesses coordinated their testimony or that Figures suffered any prejudice by his trial counsel's not moving for the sequestration of witnesses.

### (v) Motion for New Trial

Figures argues that his trial counsel was ineffective by failing to move for a new trial based upon evidence that arose after the jury rendered its verdict. Figures alleges Vanessa sent him a letter, which contained information supporting a motion for new trial, 2 days after the jury rendered its verdict. Figures asserts that he provided the letter to his trial counsel, but trial counsel never moved for a new trial.

But the State responds that Figures' *assignment*—which, as quoted above, asserted only that trial counsel failed to file a motion for new trial—was insufficient. We agree. We have already recounted a defendant's obligation to specifically allege the deficient conduct which is asserted as a claim of ineffective assistance of counsel.[66] The assignment fails to state *any* ground for the motion.

---

[65] See *id.*

[66] See *Mrza, supra* note 3.

Even if we were to consider his argument's reference to a letter, the assignment still lacks specificity. In the context of direct appeal, like the requirement in postconviction proceedings, mere conclusions of fact or law are not sufficient to allege ineffective assistance of counsel.[67] Figures fails to state what "information" was contained in the letter.[68] Without that specificity, it is at best a mere conclusion and an insufficient allegation of deficient conduct.

### (vi) Alibi

Figures assigns that his trial counsel was ineffective by failing to present his alibi defense. Figures told investigators that he was installing a car stereo with his brother and sister at the time of Green's death. Figures avers that he instructed his trial counsel to present that statement as an alibi defense, but, instead, his trial counsel only asserted that Williams killed Green. The record is insufficient to address this claim.

### (vii) Williams' DNA Sample

Finally, Figures assigns that his trial counsel was ineffective by failing to secure testing of Williams' DNA and gunshot residue samples. Neither sample was tested by law enforcement. Figures claims his trial counsel's inaction was inconsistent with his defense that Williams killed Green.

The record does not explain why Figures' trial counsel did not request that Williams' DNA and gunshot residue samples be tested. Therefore, we cannot address Figures' final claim.

## VI. CONCLUSION

We find no court errors or abuse of discretion warranting reversal. The evidence presented was sufficient for the jury to convict Figures. Finally, based upon the record provided, Figures did not receive ineffective assistance of counsel. Therefore, we affirm the judgment of the district court.

Affirmed.

---

[67] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[68] Brief for appellant at 72.