IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BEUTLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BART J. BEUTLER, APPELLANT.

Filed May 14, 2024.    No. A-23-942.

Appeal from the District Court for York County: JAMES C. STECKER, Judge. Affirmed.

David Michel, York County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Bart J. Beutler appeals his conviction and sentence in the York County District Court. Beutler claims on appeal that his trial counsel was ineffective, and his sentence was excessive. Having considered his arguments and reviewed the record, we affirm.

## BACKGROUND

Beutler called the 911 emergency dispatch number in January 2023 to report his location and tell the operator that he was using CPR on a person with a gunshot wound. When asked if the person was conscious, Beutler responded, "No, she's dead." He then identified himself and told the dispatcher that he was the person's husband. He concluded with, "I shot her, I'm sorry."

When police arrived at the residence, they found the victim deceased with multiple gunshot wounds. Dispatchers told officers that Beutler complained "the female wouldn't stop yelling." Police did not find Beutler at the scene; rather, dispatch advised officers they had received another

- 1 -

call, this time from a person identifying themselves as Beutler's brother-in-law. Officers then traveled to the brother-in-law's residence, where they found Beutler and arrested him. Beutler reportedly told officers that he had shot his wife.

After his arrest and transport to the York County Sheriff's Office, Beutler waived his Miranda rights and agreed to speak with investigators. He told investigators that his wife had kept "waking him up" and talking to him. He reported that he "just lost it" and "pulled out the gun and started shooting." Beutler admitted that he owned the gun that he used to shoot his wife and acknowledged that he was not allowed to own firearms based on his past criminal history. Upon further investigation, officers located multiple firearms in Beutler's residence.

Beutler was originally charged with first degree murder, use of a deadly weapon (firearm) to commit a felony, and possession of a deadly weapon (firearm) by a prohibited person. The information was later amended to add three additional charges of possession of a deadly weapon (firearm) by a prohibited person.

The State informed the district court at the pretrial hearing that it had reached a plea agreement with Beutler. The plea agreement provided that in return for Beutler's plea of no contest to one count of second degree murder and one count of possession of a firearm by a prohibited person, the State would dismiss the other three counts of possession of a firearm by a prohibited person and the charge for use of a deadly weapon (firearm) to commit a felony.

The district court explained Beutler's constitutional rights to him, then confirmed that he understood them. Beutler affirmed that he was satisfied with his counsel's performance and believed counsel had done a competent job representing him. The district court found that Beutler freely, knowingly, voluntarily, and intelligently entered into the plea agreement and found him guilty of second degree murder and possession of a firearm by a prohibited person.

At sentencing, the district court noted that it reviewed the presentence investigation report (PSR), including its assessments about Beutler's mental health, substance abuse questionnaire, and recidivism risk. It noted Beutler's lengthy criminal record as well. It sentenced Beutler to 60 to 80 years' imprisonment for second degree murder and 40 to 50 years' imprisonment for possession of a deadly weapon (firearm) by a prohibited person. Each sentence was ordered to be served consecutively. Beutler appeals.

## ASSIGNMENTS OF ERROR

Beutler assigns that (1) his trial counsel was ineffective for failing to move for a change of venue early in the proceedings and (2) the district court abused its discretion by sentencing him to consecutive terms.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*. When the claim is raised on direct

appeal, the appellant is not required to allege prejudice; however, appellants must make specific allegations of the conduct that they claim constitute deficient performance by trial counsel. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

ANALYSIS

*Ineffective Assistance of Counsel.*

Beutler assigns that his trial counsel was ineffective for failing to file a motion to change venue. He claims that after the incident, "local media was flooded with stories about the incident, and about [Beutler's] past record in particular." Brief for appellant at 10. He explains that the "massive pretrial publicity" meant he could not have received a fair trial. *Id.* Beutler argues that although voir dire examination may provide the best opportunity to determine if a change of venue is necessary and he accepted a plea agreement, his trial counsel should have filed the motion before he entered into a plea agreement as "a tactic to 'level the playing field.'" *Id.* at 11.

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether a claim was brought before the appellate court. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Anders, supra*. The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Stelly, supra*.

Here, Beutler does not argue that had his counsel moved for a change of venue, there is a reasonable probability he would have insisted on going to trial instead of accepting a plea; rather, he argues that had counsel filed a motion for a change of venue, he would have been in a better position to negotiate a plea. But that is not the standard. See *State v. Fester, supra*. Beutler argues that a motion for a change of venue would have been a "tactic to 'level the playing field' regarding potential *future* plea negotiations." Brief for appellant at 11 (emphasis in original). Because Beutler does not assert that but for counsel's failure to file a motion for a change of venue there is a

reasonable probability that he would not have accepted the plea and instead proceeded to trial, this assignment of error fails.

For purposes of completeness, and applying the proper standard, Beutler cannot prove that had counsel filed a motion for a change of venue, he would have insisted on going to trial. Beutler was initially charged with first degree murder, a Class IA felony, use of a firearm to commit a felony, a Class IC felony, and two counts of possession of a firearm by a prohibited person, Class ID felonies. A Class IA felony carries a mandatory life sentence, and a Class IC felony carries a mandatory minimum 5 years' imprisonment to a maximum of 50 years' imprisonment. Given the weight of the evidence against Beutler and the generous plea offer that substantially reduced his prison time, there is not a reasonable probability he would have insisted on going to trial. Understandably, Beutler does not even make this argument.

*Excessive Sentence.*

Beutler assigns that the district court abused its discretion by imposing an excessive sentence because it amounted to a sentence of life in prison. He argues that the district court abused its discretion because it was fully aware of Beutler's age, so it knew it was sentencing him to a de facto life sentence.

Beutler was convicted of second degree murder, which is a Class IB felony and possession of a deadly weapon (firearm) by a prohibited person, a Class ID felony. A Class IB felony carries a minimum term of 20 years' imprisonment and a maximum term of life imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). A Class ID felony carries a minimum sentence of 3 years' imprisonment and a maximum sentence of 50 years' imprisonment. *Id*. Beutler was sentenced to 60 to 80 years' imprisonment for the second degree murder conviction and 40 to 50 years' imprisonment for the possession of a deadly weapon (firearm) by a prohibited person conviction to be served consecutively. Since both sentences fall within the statutory guidelines, we review for an abuse of discretion.

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017).

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The sentencing court is not required to articulate on the record that it has considered each sentencing factor or make specific findings as to the facts pertaining to the factors or weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

The PSR indicates that Beutler was 48 years old at the time of sentencing. Beutler did not graduate from high school but did earn his GED. He indicated at a preliminary hearing that he completed some college. Beutler completed a substance abuse questionnaire. In the questionnaire,

- 4 -

Beutler scored "Maximum Risk," as he exhibited violent tendencies and a well-established pattern of violence. Beutler scored a "none to low" risk for substance misuse for his Simple Screening Instrument. For his mental health screen, Beutler answered "yes" to 12 questions, which generally indicates further mental health intervention is warranted.

Beutler has a lengthy criminal record. His most notable previous conviction is for second degree murder, which he was convicted of in 2010 in Arizona. He also had previous convictions for armed robbery, failure to comply with a court order, assault, harassment, and domestic violence. The PSR placed Beutler at a "High" risk level for recidivism. Due to the nature of his offense, Beutler completed the Domestic Violence Offender Matrix, in which he was assessed as a "High risk" for further violent reoffending.

There is a substantial amount of violence involved in Beutler's offense, as he shot his wife until "the clip was empty." The victim was shot multiple times and she died from her gunshot wounds. Beutler reported in his PSR interview that the victim was screaming and slamming doors while Beutler tried to sleep, which is when his "rage took over" and he shot the victim from across the house. Murder is a serious crime, especially when viewing this case in conjunction with Beutler's unlawful possession of a firearm that was used to kill his wife.

At sentencing, the district court stated that it read the PSR and considered each assessment Beutler completed. It noted Beutler's age and previous criminal record. It spoke on the nature of Beutler's convictions, as well as the loss the victim's family suffered. Although the district court does not need to make specific findings on the record for each sentencing factor, it discussed many of them on the record. See *State v. Greer, supra*. We find no abuse of discretion in the sentence imposed by the district.

CONCLUSION

For the foregoing reasons, we affirm.

AFFIRMED.