IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MORRIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JASON E. MORRIS, APPELLANT.

Filed September 13, 2022.    No. A-21-841.

Appeal from the District Court for Douglas County: SHELLEY R. STRATMAN, Judge. Affirmed.

James Walter Crampton for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Jason E. Morris appeals from his conviction in the district court for Douglas County, following a bench trial, for one count of first degree sexual assault. On appeal, he assigns error to the sufficiency of the evidence to sustain his conviction, and argues that the district court failed to rule on his motion to quash and failed to arraign him following the filing of a second amended information. He also argues that he received ineffective assistance of trial counsel in various regards. For the reasons contained herein, we affirm.

## II. STATEMENT OF FACTS

### 1. PROCEDURAL BACKGROUND

This case arises out of incidents occurring between Morris and the daughter of his former girlfriend, A.K. On November 22, 2019, the State filed a complaint in the county court for Douglas

County, charging Morris with three counts of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2016), a Class II felony. Specifically, the State alleged that Morris subjected A.K. to sexual penetration, without the consent of A.K., on three occasions occurring between May 1 and November 19, 2019.

Following a preliminary hearing on January 3, 2020, the case was bound over to district court for trial. On January 6, the State filed an information in district court charging Morris with counts identical to those in the county court complaint. The information also identified four witnesses for the State: A.K.; A.K.'s sister, T.K.; A.K.'s mother; and Ryan Kilawee. On January 21, the State filed a motion for leave to endorse additional witnesses, including Douglas Arrick, Lisa Crouch, Ashley Harris, Danielle Myers, and T.K.'s father. A hearing on the State's motion was scheduled for March 12, but no hearing was held on this date. Our record does not contain an order on the State's motion.

On January 27, 2020, Morris filed a motion to quash counts I and II of the State's information. Morris argued that because all three counts were plead "exactly the same," there was nothing that distinguished one count from the others. Morris' motion further requested an order directing the State to file a new information distinguishing counts I and II.

A pretrial conference was held on March 23, 2020. The State's oral motion to file an amended information was granted and the district court continued Morris' motion to quash and the pretrial conference. On April 7, the State filed an amended information charging Morris with three counts of first degree sexual assault. All three counts alleged that Morris had subjected A.K. to non-consensual sexual penetration, with count I alleging an assault occurred in her bedroom between August 1, 2018, and May 1, 2019; count II alleging an assault occurred in her mother's bedroom between August 1, 2018, and May 1, 2019; and count III alleging an assault occurred between May 2 and August 31. The court did not explicitly rule on Morris' motion to quash the initial information and Morris did not file a second motion to quash.

At a hearing on September 28, 2020, Morris' trial counsel informed the district court that Morris wished to waive his right to a jury trial and proceed with a bench trial. The court inquired whether Morris was formally waiving his right to a jury trial.

THE COURT: All right. So, Mr. Morris, you understand, sir, that you have the right to have your case heard by a jury?

MORRIS: I'm innocent.

THE COURT: Okay. Now I'm asking if you understand that you have a right to have your case heard by a jury? You understand that?

MORRIS: Yeah. I just would like you to hear it.

THE COURT: Okay. But I need to make a record that you understand that that's a right that you have.

MORRIS: Yes, ma'am.

THE COURT: That you have the right to have a jury trial and the only person who can waive that right is you. You understand that?

MORRIS: Yes, ma'am.

THE COURT: And what do you want to do here today with regards to your jury trial?

MORRIS: Can I ask my sister?

THE COURT: . . .

MORRIS: What should I do?

UNIDENTIFIED PERSON: You asking me?

MORRIS' TRIAL COUNSEL: You need to -- you can talk to her later.

MORRIS: Yes, I want to waive the jury trial and go along with the bench trial.

THE COURT: Okay. Has anybody made you threats to get you to waive this right?

MORRIS: I just want to get this over with, ma'am. I'm just tired of being in jail for something I didn't do.

THE COURT: I told understand that. We need to make a record. Nobody's threatened you to get you to waive this?

MORRIS: No.

THE COURT: Nobody's made any promises to get you to waive this right?

MORRIS: No, ma'am.

THE COURT: And you understand if you waive this right to a jury, it will be a bench trial and I will be both the finder of fact and the judge on the law that's to be applied.

MORRIS: Yes, ma'am.

THE COURT: So I'll ask you again, Mr. Morris: Are you freely, knowingly, voluntarily and intelligently waiving your right to a jury trial?

MORRIS: I freely voluntarily intelligently waiving my right to a jury trial.

THE COURT: All right. I will enter an order showing we [sic] waived his right to a jury trial. . . .

On March 22, 2021, the State filed a motion for leave to endorse additional witnesses, including Javeyonna Smith. In an order filed March 26, the district court granted the State's second motion to endorse.

## 2. BENCH TRIAL

A bench trial was held before the district court from March 31 to April 2, 2021. At the start of the trial, the State requested leave to file a second amended information charging Morris with one count of first degree sexual assault. Specifically, the information alleged that Morris had subjected A.K. to non-consensual sexual penetration, between August 1, 2018, and August 1, 2019. Morris' trial counsel did not object to the State's motion and indicated that Morris was waiving a formal reading and advanced service of the second amended information. The bench trial proceeded without Morris entering a plea to the second amended information.

Both the State and Morris offered evidence during the bench trial.

### (a) State's Evidence

A.K. testified that she was a junior in high school during the 2018-2019 school year. During that time, she lived in her mother's home with her younger sister, T.K., and various cousins. A.K. identified Morris as the former boyfriend of her mother. Morris was regularly at A.K.'s home and would occasionally spend the night. A.K. and Morris were often alone together, as A.K.'s mother worked a regular overnight shift at a gas station and T.K. would visit her father's home.

- 3 -

A.K. testified that Morris frequently made her uncomfortable. A.K. described Morris staring at her while rubbing his hands and licking his lips. Morris would also call and text message A.K. and attempt to persuade her to come over to his home.

A.K. stated that Morris' behavior escalated, and on several occasions Morris entered her bedroom and penetrated her vagina with his penis and fingers. At times, Morris would physically restrain A.K. A.K. noted that one time Morris pushed her onto her bed with such force that the bed frame broke. Once, Morris also forced A.K. to touch his penis and to perform oral sex on him.

A.K. testified to a specific assault which occurred while her sister, T.K., was in the home. A.K. had just taken a shower and walked into her bedroom across the hall. After A.K. entered her bedroom, she turned around to see Morris behind her. Morris then asked A.K. if she had told her mother that Morris had previously sexually assaulted her, and he began to grab at A.K.'s arms and wrists. A.K. stated that Morris pushed her onto her bed, pinned her wrists above her head, and "forcefully" put his penis into her vagina while standing over her.

A.K. described T.K. pounding on her bedroom door and yelling for Morris to "get off" of A.K. A.K. struggled with Morris and kicked him with enough force that Morris fell to his knees. A.K. felt blood running down her legs. After Morris left her bedroom, A.K. took another shower and slept with T.K. in T.K.'s bedroom, because A.K. did not feel safe in her own room. A.K. was unable to provide the exact date this alleged sexual assault occurred.

Regarding this specific incident, T.K. testified that she heard A.K. screaming for help while A.K. and Morris were in A.K.'s bedroom. T.K. tried to unlock A.K.'s bedroom door while a cousin, who was also home at the time, tried to kick down the door. After Morris left the bedroom, T.K. found A.K. crying inside. The cousin was unavailable to testify at trial.

A.K. testified that she attempted to avoid Morris inside her mother's home. She locked herself in her bedroom and refused to eat with the family while Morris was in the home. A.K. also experienced bouts of depression following her sexual assaults. A.K. described missing weeks of school to stay in bed, losing her appetite, and engaging in self-harming behaviors.

Sometime during the 2018-2019 school year, A.K.'s friend, Javeyonna Smith, spent the weekend at A.K.'s house. Smith testified that Morris often came to A.K.'s room to check on them while wearing only his boxers. Smith noticed that A.K. became irritable whenever Morris was present and she observed Morris place A.K. in a chokehold during an argument in the kitchen. Before and after the sleepover, A.K. told Smith that Morris made her uncomfortable.

T.K.'s father testified that A.K. told him that someone at her home was making her feel uncomfortable. He further testified that he relayed A.K.'s concern to her mother.

A.K. testified she eventually told her mother that Morris was assaulting her. A.K. was unsure when her disclosure occurred, but remembered that it happened over a weekend during warm weather. A.K. noted that her mother was initially upset by her disclosure and took back Morris' key to the family's home. However, A.K.'s mother stayed in an "off and on" relationship with Morris.

Early in the morning on November 19, 2019, A.K. and her mother had a verbal and physical altercation. A.K. testified that her mother locked her outside of their house and so A.K. waved down a passing motorist, who called the police for assistance.

Officer Douglas Arrick responded to the call and proceeded to A.K.'s home. Arrick testified that when he arrived, he observed A.K. standing on the sidewalk and dressed

inappropriately for the cold weather; as she was wearing a sweatshirt, leggings, and house slippers. Arrick knocked on the front door of the home, but no one answered. After speaking with A.K., Arrick contacted his supervisor, who instructed him to take A.K. to Project Harmony, a Child Advocacy Center.

Ashley Harris, a nurse practitioner, performed A.K.'s physical examination at Project Harmony. Harris testified that she began the exam by asking A.K. questions about her health history, including her sexual history. A.K. informed Harris that her mother's ex-boyfriend, "Jason," had repeatedly forced her to have sex with him. Harris testified that A.K. stated that the assaults occurred in her bedroom and that Morris would physically restrain her while he "rammed" his penis into her vagina. A.K. described the physical pain these assaults caused, including the sensation that "something ripped," and the bleeding she experienced. A.K. also reported to Harris that Morris had forced A.K. to perform oral sex and to touch his penis with her hand. A.K. consented to a genital exam, which did not present any injuries. Harris testified that most sexual assaults do not produce abnormal findings on a genital exam.

Following the examination, Harris contacted Investigator Ryan Kilawee and advised him that A.K. had reported that she was sexually assaulted by her mother's boyfriend, "Jason." Kilawee then scheduled forensic interviews for A.K. and T.K.

Danielle Myers, a forensic interviewer at Project Harmony, conducted the interviews. A.K. again described being sexually assaulted by Morris, and T.K. described being present for the assault that occurred in A.K.'s bedroom while T.K. was at the home. Both forensic interviews were offered and played for the district court. Myers also testified that delayed disclosure of sexual assault is common, as children could be worried that they will not be believed or could feel threatened. Myers noted that when sexual abuse occurs multiple times, a child often merges certain events together in her memory, and is thus unable to articulate between different events because of the nature of the repeated assaults.

Because A.K. had only provided Kilawee with the name "Jason," Kilawee searched prior police reports and found Morris' name mentioned in connection with another incident at A.K.'s home. Kilawee located a picture of Morris, which matched the physical descriptions provided by A.K. and T.K.

Investigator Lisa Crouch testified that on November 20, 2019, she assembled a photo lineup that included Morris and presented it to A.K. A.K. identified Morris as her assailant and then became shaky and upset.

The same day of the photo lineup, Kilawee testified that he executed a search warrant at A.K.'s home. Kilawee observed a damaged bed frame, which was consistent with A.K.'s statement in her forensic interview that Morris had broken her bed during an assault.

Morris was arrested at his residence and interviewed by Kilawee. During his interview, Morris stated that A.K.'s mother had taken back his key to the house. Kilawee testified that Morris confirmed A.K.'s mother had confronted him about A.K.'s disclosure of sexual assault. Morris attributed A.K.'s mother taking back the key to A.K.'s disclosure as well as the mother having a new boyfriend.

### (b) Morris' Evidence

A.K.'s mother testified that she had concerns regarding A.K.'s behavior beginning in March 2019. The mother described A.K. as skipping school, having boys over to the house, and generally as "out of control." The mother testified that A.K. disliked Morris and that she had caught A.K. in a number of lies. On cross examination, A.K.'s mother denied that A.K. had disclosed being sexually assaulted by Morris to her.

Morris also presented the testimony of two additional Omaha Police Department officers who were called out to A.K.'s home on November 19, 2019. Both officers testified that A.K. did not want to return to the home, but referenced only the altercation with her mother and not a sexual assault.

### 3. VERDICT AND SENTENCING

On April 2, 2021, the district court found Morris guilty of first degree sexual assault. On September 22, 2021, the district court sentenced Morris to 8 to 14 years' imprisonment.

Morris appeals.

## III. ASSIGNMENTS OF ERROR

Morris assigns, restated, that (1) there was insufficient evidence to support his conviction of first degree sexual assault; (2) the district court erred in failing to rule on Morris' motion to quash; (3) the district court erred in failing to arraign Morris after the filing of the second amended information; and (4) trial counsel was ineffective in failing to pursue the motion to quash; proceeding to trial on the second amended information without arraignment or a preliminary hearing; failing to investigate defenses; failing to object to the testimony of unendorsed witnesses; failing to properly advise Morris about the waiver of a jury; and failing to ask for a continuance.

## IV. STANDARD OF REVIEW

An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. In making this determination, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Taylor*, 310 Neb. 376, 966 N.W.2d 510 (2021).

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

# V. ANALYSIS

## 1. SUFFICIENCY OF EVIDENCE

Morris asserts that the district court's finding of guilt was not supported by the evidence. He argues that the State did not prove when the alleged sexual assault occurred and that there was no physical evidence which "even suggests a crime was committed." Brief for appellant at 7.

Under § 28-319(1)(a) "Any person who subjects another person to sexual penetration without the consent of the victim . . . is guilty of sexual assault in the first degree."

Morris does not assert that the assault was with consent; rather, he argues that the evidence is insufficient to show that the alleged sexual assault even happened. We disagree. A.K. gave detailed testimony about numerous acts of sexual assault by Morris during the 2018-2019 school year. One specific assault was corroborated by T.K. who was in the house at the time. T.K. testified that she heard A.K. screaming for help while A.K. was in her bedroom with Morris. A.K. testified that Morris pinned her arms above her head before sexually penetrating her. After Morris penetrated her vagina with his penis, A.K. kicked at Morris in a physical attempt to stop him from having sex with her. Although A.K. was unable to provide the exact date of this or any other instances of sexual assault, she testified that Morris subjected her to unwanted sexual penetration on several occasions. Myers testified that when a child has been sexually assaulted multiple times over an extended period, she may have difficulty differentiating between the various assaults. See, also, *State v. Wehrle*, 223 Neb. 928, 395 N.W.2d 142 (1986) (finding date of commission is not essential element of first degree sexual assault); *State v. Kelly*, 20 Neb. App. 871, 835 N.W.2d 79 (2013) (concluding State presented sufficient evidence to prove first degree sexual assault convictions though victim could not recall specific dates).

While Morris makes arguments related to the credibility of A.K.'s testimony, determinations of the weight and credibility of evidence are matters for the fact finder and not this court. See *State v. Taylor, supra*. Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of first degree sexual assault beyond a reasonable doubt. Accordingly, Morris' argument to the contrary fails.

## 2. MOTION TO QUASH

Morris next assigns that the district court erred by failing to rule on his motion to quash. The record reflects that the district court took Morris' motion to quash the original information under advisement but never ruled on it. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). Additionally, Nebraska appellate courts have long held that a party who fails to insist upon a ruling to a proffered objection waives that objection. See *State v. Gill*, 297 Neb. 852, 901 N.W.2d 679 (2017) (defendant in criminal action failed to insist on ruling on second motion to quash); *State v. Dean*, 270 Neb. 972, 708 N.W.2d 640 (2006) (defendant in criminal action failed to insist on ruling on motion for discovery); *State v. Rodriguez*, 6 Neb. App. 67, 569 N.W.2d 686 (1997) (defendant in criminal action failed to insist on ruling on motion for directed verdict).

We note that in his motion to quash, Morris requested an order directing the State to file a new information which distinguished the offenses. However, because there was no ruling on

Morris' motion to quash, and because Morris did not insist upon a ruling, any questions regarding his motion to quash are not properly before us. Accordingly, we do not consider further Morris' assignment of error that the district court erred in failing to rule on his motion to quash.

### 3. FAILURE TO ARRAIGN

Morris assigns that the district court erred by failing to arraign him on the second amended information before proceeding to the bench trial. He also argues that he was entitled to a preliminary hearing on the second amended information and that the court should have inquired about his previous jury waiver. We take up these arguments in turn.

Neb. Rev. Stat. § 29-1816 (Supp. 2021) provides in part:

The accused shall be arraigned by reading to him or her the indictment or information, unless the reading is waived by the accused when the nature of the charge is made known to him or her. The accused shall then be asked whether he or she is guilty or not guilty of the offense charged. If the accused appears in person and by counsel and goes to trial before a jury regularly impaneled and sworn, he or she shall be deemed to have waived arraignment and a plea of not guilty shall be deemed to have been made.

Here, Morris waived the reading of the second amended information and advance service, choosing to proceed with trial. Because the trial court acts as the finder of fact in a bench trial, we find it reasonable to also apply the waiver of arraignment provision of § 29-1816 to trial by the court upon the accused's waiver of a jury. See *State v. Hill*, No. A-03-327, 2004 WL 1961298 (Neb. App. Sept. 7, 2004) (not designated for permanent publication). Clearly, Morris would have entered a plea of not guilty to the second amended information given his choice to proceed to trial. We also note that in *State v. Hernandez*, 268 Neb. 934, 689 N.W.2d 579 (2004), the Nebraska Supreme Court addressed a similar argument, finding that because the defendant appeared, was represented by counsel, and went to trial, he waived any argument that he should have been rearraigned on the amended information. Thus, because Morris appeared in person and by counsel and went to trial, the district court did not err by failing to arraign Morris on the second amended information.

Regarding Morris' claim that he was entitled to a preliminary hearing on the second amended information, the requirement that a defendant receive a preliminary hearing before an information is filed against him for any offense does not extend to amended informations that do not change the nature or identity of the offense charged and do not include additional elements. See *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010). Because Morris was only ever charged with various counts of first degree sexual assault throughout his case, Morris was not entitled to a new preliminary hearing. Moreover, any error in failing to hold a preliminary hearing was cured by the district court's subsequent finding that he was guilty beyond a reasonable doubt. See *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998) (noting purpose of preliminary hearing is limited to ascertaining whether or not crime was committed and whether or not there is probable cause to believe accused committed it).

Finally, Morris cites no authority to support his assertion that the district court erred by failing to inquire about his previous jury waiver. Additionally, the second amended information merged the three counts of first degree sexual assault into one and shortened the date range of the

alleged assault. Because the second amended information did not change the nature or identity of the offense charged and did not include additional elements, the court had no reason to revisit Morris' jury waiver.

## 4. Ineffective Assistance of Counsel

Morris claims his trial counsel was ineffective. He is represented on direct appeal by different counsel than the initial trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the ineffective assistance of trial counsel issue will be procedurally barred. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.*

When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). With these governing principles in mind, we turn now to address Morris' claims that his trial counsel was ineffective.

### (a) Failure to Pursue Motion to Quash

Morris asserts that his trial counsel was ineffective for failing to pursue his motion to quash after it was continued by the district court. Specifically, Morris argues that counsel's failure to obtain a ruling on the motion affected his right to a speedy trial and that the motion could have produced another amended information or an arraignment.

We first address Morris' argument that his speedy trial clock was tolled the "entire period from the filing [of the motion to quash] until trial" as a result of his counsel's failure to insist upon a ruling. Brief for the appellant at 10. Morris' motion to quash was filed on January 27, 2020. While it was not formally ruled on but continued by the district court, the requested relief in the motion, that a new information be filed distinguishing the counts, was accomplished by the filing of the amended information on April 7. Thus, we disagree that the failure to insist upon a formal ruling on the motion to quash the original information tolled the entire time up to trial. And, as the State notes, the period from June 5, 2020, to March 26, 2021, was excludable due to various pretrial motions filed by Morris, including motions in limine and for discovery. See *State v. Williams*, 277 Neb. 133 (2009) (explaining that plain terms of Neb. Rev. Stat. § 29-1207(4)(a) (Reissue 2016) exclude all time between time of filing of defendant's pretrial motions and their final disposition). Because Morris' trial clock was tolling regardless of whether the motion to quash was still "open," Morris is unable to establish prejudice.

Morris next argues that had his trial counsel "simply rescheduled" the hearing on his motion to quash, the hearing would have resulted in an amended information or an arraignment. First, as noted above, the motion to quash did in effect result in the filing of an amended information as Morris requested. Further, Morris fails to specifically identify his counsel's deficient performance. Morris' claim is conclusory and he provides no basis for which his counsel could have challenged the State's amended information. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Therefore, this claim fails.

### (b) Proceeding to Trial Without Arraignment

Morris asserts that he had a right to be arraigned on the State's second amended information and that trial counsel was ineffective for proceeding to the bench trial without this arraignment or an additional preliminary hearing.

As discussed above, the second amended information encompassed the same allegations as the previous informations, and further reduced the counts to only one within the same time frames previously alleged. Thus, trial counsel did not need additional time to prepare for trial. Also, Morris was not entitled to an additional preliminary hearing and therefore trial counsel was not ineffective for proceeding immediately to trial. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022). This claim fails.

### (c) Failure to Investigate Defenses

Morris' argument that his trial counsel was ineffective in "Failing to Investigate Factual Defenses" is not sufficiently specific. An alleged error must be both specifically assigned and

specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). As stated, when the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). An assignment of error that trial counsel was ineffective by "'fail[ing] to adequately investigate [the defendant's] defenses'" lacked the specificity the court demands on direct appeal. *Id*. See also, *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825, 859 (2021) (finding the assignment of error that trial counsel was ineffective in "failing to investigate the case fully" lacked the required specificity). Morris' assignment of error is similar. It lacks any specificity as to what component of investigation regarding a defense his counsel was allegedly deficient in failing to conduct. Therefore, we do not address it.

### (d) Failure to Object to Unendorsed Witnesses

Morris asserts that his trial counsel was ineffective for failing to object to the testimony of six unendorsed witnesses, as the only endorsed witnesses who names appeared on an information were A.K.; T.K.; A.K.'s mother; and Kilawee.

The record shows that prior to trial the State requested leave to endorse all witnesses who testified. Although our record does not include a ruling on the State's first motion to endorse additional witnesses, the district court granted leave for the State's second motion to endorse.

The purpose of the endorsement requirement in Neb. Rev. Stat. § 29-1602 (Reissue 2016) is to notify the defendant as to witnesses who may testify against him and give him an opportunity to investigate them. *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997). Here, Morris had notice of all witnesses presented by the State prior to trial. While the State failed to add the witnesses' names to the two amended informations, that omission was a mere irregularity that does not warrant reversal. See *State v. Caldwell*, 183 Neb. 712, 164 N.W.2d 213 (1969).

Because Morris' trial counsel had notice of all the State's witnesses prior to trial, and therefore had the opportunity to investigate them, counsel was not ineffective for failing to object to the testimony of unendorsed witnesses nor was Morris prejudiced by any such failure. This claim fails.

### (e) Failure to Give Proper Jury Waiver Advisement

Morris asserts that his trial counsel did not advise him of the full implications of waiving his right to a jury trial.

At the hearing on February 10, 2021, trial counsel noted Morris had communicated his desire to waive his right to a jury trial and proceed with a bench trial. The district court then informed Morris of his right to a jury trial and that at a bench trial the court would be both the finder of fact and the judge of the applicable law. Morris responded to the judge, "Yeah, I just would like you to hear it." After a dialogue between the judge and Morris, Morris responded that he was "freely voluntarily intelligently waiving [his] right to a jury trial."

We conclude that the record affirmatively refutes this claim. Morris was clearly advised by the trial court of the ramifications of waiving his right and he does not indicate what further advisement he should have been given by his trial counsel. This claim fails.

## (f) Failure to Request Continuance

Finally, Morris asserts that his trial counsel was ineffective for failing to request a continuance after the State filed the second amended information. Morris argues that a lawyer with ordinary training and skill in criminal law would have "at least requested a recess" to consult with Morris regarding the new information. Brief for appellant at 12.

The record demonstrates that trial counsel discussed the second amended petition with Morris prior to trial. However, Morris does not detail why a continuance and an additional consultation was necessary after the second amended petition was filed. Without more, this allegation is not sufficiently specific to allege deficient performance. See *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Because Morris does not specifically state how trial counsel preformed deficiently, this claim fails. In addition, Morris admits in his brief that he would have been "disinclined" to move for a continuance. Brief for appellant at 12. Thus, he is unable to show prejudice from this claimed failure.

## VI. CONCLUSION

There was sufficient evidence to support Morris' conviction for first degree sexual assault. We also find that Morris waived his arraignment on the second amended information. Morris' ineffective assistance of counsel claims are without merit. Because the district court did not rule on Morris' motion to quash, and because he did not insist on a ruling, we do not review that assignment of error.

AFFIRMED.