IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. JENNINGS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON JENNINGS, APPELLANT.

Filed June 20, 2023.    No. A-22-806.

Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Ashley L. Albertsen, of Oestmann & Albertsen Law, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Brandon Jennings appeals his plea-based convictions from the Douglas County District Court. He assigns that his trial counsel was ineffective regarding his plea, and the district court erred by not allowing him to withdraw his plea prior to sentencing. Having considered his arguments and reviewed the record, we affirm.

## II. BACKGROUND

On September 27, 2020, Jennings was arrested with his twin brother by the Omaha Police Department and subsequently brought to Douglas County Corrections (DCC). In transit to DCC, Jennings became irate, telling officers that he was going to harm himself or harm them and that he was armed. Jennings' behavior continued through the booking phase at DCC, until two officers moved Jennings from the booking area to a changing room.

- 1 -

In the changing room, Jennings pulled a gun from his waistband and pointed it at the two officers. He then exited the changing room and pointed the gun at six additional officers. Jennings ran into another changing room and back out, looking for his brother. Jennings eventually gave up, ran back into a changing room, and shot himself in the chin.

After officers heard a gunshot, they heard Jennings crying out for help. Jennings complied when officers ordered him to throw the gun out of the changing room. Jennings was found with a self-inflicted gunshot wound to the chin and was transported to a hospital for treatment.

Jennings was originally charged with 10 counts of terroristic threats, 10 counts of use of a deadly weapon (firearm) to commit a felony, possession of a deadly weapon by a prohibited person, and possession of a stolen firearm. Jennings was found to be indigent and was appointed counsel. He waived his right to arraignment and entered a not guilty plea.

### 1. Trial Continued Pending Mental Evaluations

In April 2021, the State amended Jennings' original charges. Pursuant to the district court's order to consolidate, the State amended the information to add count 23, carrying a concealed weapon, and count 2, intimidation or possession of implements of escape—inmate. On April 16, Jennings' counsel motioned to determine whether Jennings was competent to stand trial.

On June 3, 2021, Jennings wrote a letter to the court. He requested to file a motion for ineffective assistance of counsel and argued that his lawyer was not properly defending him. He raised multiple grievances in his letter with how his counsel spoke to him and concluded that he did not feel comfortable with her representation. However, the salutation of the letter named a judge different than the one presiding over Jennings' current case.

After a series of continuances, the pretrial conference was held on January 12, 2022. Jennings' counsel informed the court that they were withdrawing their motion to determine competency because Jennings had completed his evaluation. The district court then set the date for trial. A week later, Jennings' counsel moved to continue the upcoming trial and filed a notice informing the court that they would be relying on an insanity defense at the time of trial. The State exercised its right to evaluate Jennings with its own psychiatrist or psychologist.

### 2. Plea Agreement

On July 3, 2022, the district court was informed that Jennings and the State had reached a plea agreement. In return for Jennings' plea of no contest, the State would reduce Jennings' charges to 3 counts of terroristic threats, 3 counts of use of a deadly weapon (firearm) to commit a felony, and 1 count of possession of a deadly weapon by a prohibited person. Jennings affirmed to the district court that he understood the plea agreement. The district court asked Jennings if he was under the influence of any drugs or alcohol, and Jennings responded he was not. Jennings also confirmed that he understood his rights, and that by accepting a plea agreement, he was waiving certain constitutional rights.

The district court explained to Jennings the charges and potential penalties he faced. Jennings confirmed that he understood each charge against him. The district court also explained that if Jennings accepted the plea agreement, the penalties carry statutorily required minimum sentences and would have to be served consecutively by law. And in total, Jennings would face a

minimum of 18 years' incarceration. Jennings again confirmed that he understood the charges and potential penalties, and maintained that he wished to plead no contest.

Jennings told the district court that he was not satisfied with his counsel's representation. He explained that he felt if he had money, then the outcome of his trial would be different. Also, he was accepting the plea offer only because he was told he would spend the rest of his life in prison if he went to trial.

Jennings' counsel explained that they had discussed the likely outcome of a trial, and the potential sentences that Jennings would face if he went to trial and was convicted on the charges contained in the original information. Jennings responded that he felt coerced into the plea agreement, because he believed if he went to trial, then his counsel would not properly represent him. However, he confirmed with the district court that despite these feelings, it was still his intention to plead no contest. The court accepted his plea.

### 3. First Motion to Withdraw Plea

After accepting the plea agreement, Jennings wrote another letter to the court, dated August 9, 2022. He again contended that he was unhappy with his representation, and that he felt "pressured and forced" to accept the plea agreement. He argued that his counsel was not properly representing him, and he believed they were actively acting against his interests. He believed they were making decisions without his input, which prevented him from being able to accept an earlier offered plea agreement that carried a mandatory 8 years' imprisonment. He concluded by asking the district court to switch the plea agreement offers from the current agreement to the original one that proposed lesser charges.

The district court subsequently held a hearing on August 29, 2022, to discuss Jennings' letter. The district court reminded Jennings that he had previously stated he understood his rights and wished to plead no contest. It asked him if he wanted to stand by his plea, but Jennings responded that he was unsure how to answer the question. The district court stated Jennings' options were to take the plea agreement or go to trial. It explained to him that without the plea agreement, he faced a mandatory minimum of 53 years' imprisonment versus a mandatory minimum of 18 years' imprisonment under the plea agreement. It further explained to him the difference between a mandatory minimum sentence and a "flat sentence."

Jennings again emphasized that he wanted to go to trial, but only if he could have different counsel than his current representation. The district court explained to Jennings that he would have to keep his counsel, unless he could provide good cause for why he should have different counsel. Jennings argued that the point of his letter was that he could not go to trial with his current representation, but stated he was not sure what the court would consider good cause. After the discussion, the district court again offered Jennings his options: proceed to trial with his current counsel or stand by his plea, and Jennings stated he would stand by his plea.

### 4. Second Motion to Withdraw Plea

On October 6, 2022, the district court held a hearing on Jennings' oral motion to withdraw his plea. It reviewed the chronology of events beginning with the original plea hearing on July 19 and the subsequent August 9 letter, in which Jennings indicated he felt pressured to accept the plea agreement and that he was not being properly represented. The district court explained that akin

to the previous hearing on Jennings' first motion to withdraw, mere distrust or dissatisfaction with his court-appointed attorney is not enough to merit new counsel.

Jennings affirmed that he was renewing his request to withdraw his plea based on the same reasons as laid out in his letter. At the hearing, he confirmed he would rather go to trial and represent himself than "take a plea deal for something I didn't do." But the district court advised him that it had not yet ruled on his motion to withdraw his plea and that if it denied that motion, the only phase of the proceeding that remained was sentencing. It then proceeded on the motion to withdraw the plea.

Jennings advised the court that the basis for his motion to withdraw his plea was that at the prior hearings he was "scared to go to trial with [current counsel] on [his] behalf" but that he would rather go to trial and represent himself. The State opposed the motion and the court denied Jennings' motion to withdraw his plea. It explained to him that the court had already addressed his willingness to accept the plea agreement on July 19, 2022, and at the subsequent hearing, and that Jennings had not provided just reason for the court to grant his motion. Jennings then advised the court that at the time of the previous two hearings, he was under the influence of marijuana and K2. The district court reminded Jennings that it had inquired during the July hearing whether he had taken any drugs, legal or otherwise, and Jennings responded no. When asked if he lied at that time, Jennings responded "I apologize."

Based upon Jennings' denial of being under the influence at the original plea hearing, the court maintained its ruling denying his motion to withdraw his plea. Jennings agreed to proceed to sentencing with his current counsel.

### 5. SENTENCING

The sentencing hearing was held on October 20, 2022. Prior to sentencing Jennings, the court stated that it had received another letter from Jennings, which the court received as an exhibit. In that letter, Jennings again advised the court that he was "under the influence" at a prior hearing, despite having told the court that he was not. In the letter, he explained that he was previously unaware that an option existed for him to represent himself at trial, and that was the reason he agreed to stand on his plea rather than proceed to trial with his current counsel. He concluded the letter by stating his "best interest is going to trial on this matter." The court stated that the letter contained the same reasons Jennings had relied upon in prior motions and reminded Jennings that those motions were previously overruled; therefore, the court proceeded to sentencing.

Jennings was sentenced to 0 to 3 years' incarceration for each of the three convictions of terroristic threats; 3 to 3 years' incarceration for the prohibited person in possession of a deadly weapon conviction; and 5 to 5 years' incarceration for each of the three convictions of use of a deadly weapon to commit a felony. The terroristic threat sentences were to run concurrently to one another. The remaining sentences were to run consecutively to each other and consecutive to the sentences for the terroristic threats. In all, Jennings was sentenced to a mandatory minimum of 18 years' imprisonment and a maximum of 21 years' imprisonment. Jennings appeals.

### III. ASSIGNMENTS OF ERROR

Jennings assigns two errors. His first assigned error is that he "received ineffective assistance of counsel in preparing for trial, taking a plea, and at sentencing. Jennings' counsel

advised him to plea despite his mental health and assessments indicating possible insanity defenses, and pushing Jennings to a plea against his repeated statements." His second assigned error is that the district court erred by not allowing him to withdraw his plea.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*. When the claim is raised on direct appeal, the appellant is not required to allege prejudice; however, appellants must make specific allegations of the conduct that they claim constitute deficient performance by trial counsel. *Id*.

A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*.

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

#### (a) General Principles

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id*.

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to determine whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether a claim was brought before the appellate court. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

Here, Jennings is represented by counsel different from his trial counsel. When a defendant is represented by counsel different from his or her trial counsel on direct appeal, the defendant

must raise any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *Id*.

Jennings assigns that his counsel was ineffective in "preparing for trial, taking a plea, and at sentencing." This statement lacks the specificity we demand on direct appeal. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). It does not contain any specificity as to what component of the trial preparation, plea hearing, or sentencing counsel was deficient in. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021). Therefore, we will not address this portion of Jennings' assigned error.

### (b) Advising Jennings to Accept Plea Agreement

Jennings assigned that his "counsel advised him to plea despite his mental health and assessments indicating possible insanity defenses." Brief for appellant at 7. However, the only argument Jennings makes regarding advice from counsel was that counsel told him "if he did not take a plea he would spend the rest of his life incarcerated." *Id*. at 17. References to his competency are made in conjunction with an argument that counsel failed to discuss trial strategies with him and withdrew his insanity defense without discussing other possible defenses with him, but failure to discuss trial strategies and withdrawal of the insanity defense are not assigned as errors.

To obtain appellate review, an error must be specifically assigned and argued. *State v. Edwards*, 301 Neb. 579, 919 N.W.2d 530 (2018). Our reading of Jennings' brief does not disclose an argument supporting his assigned error that counsel advised him to plea despite his mental health and assessments indicating possible insanity defenses. And counsel's statement that he "would spend the rest of his life incarcerated" if he did not take a plea does not rise to the level of ineffective assistance of counsel considering the mandatory minimum of 53 years' imprisonment he faced under the original information and the video evidence that would be offered at trial. Therefore, we do not further address Jennings' assigned error.

### (c) Intimidating Jennings to Accept Plea Agreement

Jennings contends that if his counsel had not told him that it would "piss the judge off" to not take the plea agreement, then he would have insisted on going to trial. Brief for appellant at 19.

The record refutes Jennings' contention. Jennings originally told the district court he wished to withdraw his plea because he was not satisfied with how his counsel represented him. He explained at the plea hearing that he felt coerced into taking his plea, yet when given the opportunity at the plea hearing to accept the plea or not, Jennings pled no contest. Jennings raised multiple grievances about his counsel in both letters to the court, such as his belief that his counsel was lying to him and misleading him; that his counsel would hang up on him and not communicate with him; and that his counsel told him he could expect "a few hundred years" if he went to trial. All of these were reasons upon which he based his request to withdraw his plea and refute his contention that if counsel had not told him rejecting the plea would "piss the judge off," he would not have taken a plea.

It is clear that Jennings was unhappy with his trial counsel. However, he failed to establish that he would have insisted on going to trial if his trial counsel had not told him that it would "piss

the judge off" if he did not take the plea agreement. Jennings made his dissatisfaction with his trial counsel known at the plea hearing and two subsequent motions to withdraw hearings. And he informed the judge that counsel told him he "was going to piss you off" if he proceeded to trial. At each hearing, the district court asked Jennings whether he wanted to proceed to trial with counsel or stand on his plea, and each time Jennings stood on his plea because he could not provide good cause for appointing new counsel. Even in Jennings' first letter to the court, he asked that he be allowed to take the lesser plea agreement previously offered, which again negates his contention that he would have gone to trial but for counsel's statement. Altogether, the record refutes Jennings' claim of ineffective assistance of counsel.

### (d) Jennings' Remaining Arguments Were Not Assigned

Jennings raises three additional arguments in his brief to support his claim that his trial counsel was ineffective. He argues that his trial counsel was ineffective for: (1) failing to work with Jennings on trial strategy and by withdrawing his notice of intent to rely on insanity defense, (2) failing to perform basic due diligence, and (3) failing to file a motion to withdraw the plea. None of these arguments are assigned, and we will not consider an error that is not specifically assigned and argued. *State v. Edwards*, 301 Neb. 579, 919 N.W.2d 530 (2018).

### 2. MOTION TO WITHDRAW PLEA

### (a) Jennings Did Not Show Just or Fair Cause

Jennings argues he made two statements that merited good cause for the district court to allow him to withdraw his plea. First, he had confessed to being under the influence of marijuana and K2 at the time his plea was entered. Second, Jennings stated he felt forced to take the plea to avoid angering the district court because his counsel had told him that she had known the judge for over 25 years.

The right to withdraw a plea previously entered is not absolute. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). When a defendant moves to withdraw his plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id*. The defendant has the burden of showing the grounds for withdrawal by clear and convincing evidence. *Id*.

Our review of the record fails to contain clear and convincing evidence that Jennings was under the influence of these drugs or that they in any way impacted his state of mind when his plea was entered. First, Jennings told the district court that he was not under the influence of any drugs or alcohol when he accepted his plea agreement. He was able to respond properly to all of the questions posed to him by the court regarding the charges and his waiver of rights. Furthermore, he engaged in a lengthy discussion with the court in which he voiced dissatisfaction with his counsel and that he felt coerced into taking the plea because he was told if he did not, he would spend the rest of his life in prison. Jennings' counsel also affirmed to the court that Jennings appeared to understand the plea agreement and the circumstances surrounding it. Jennings did not advise the court that he was under the influence of drugs until the October 6, 2022, hearing. He only raised his apparent intoxication after the district court overruled his second motion to withdraw.

There is nothing in the record which indicates that Jennings was, in fact, under the influence of any drugs when he appeared before the court and entered his plea. Similarly, there is absolutely nothing in the record which indicates that the drugs in any way impacted his ability to rationally consider his alternatives and enter an intelligent plea. Because Jennings failed to provide clear and convincing evidence to support this basis for withdrawing his plea, we cannot say that the district court abused its discretion in denying the motion. See *State v. James*, 6 Neb. App. 444, 573 N.W.2d 816 (1998), *disapproved on other grounds, State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000).

Jennings asserts he should have been allowed to withdraw his plea because he told the court he felt forced to take the plea. Jennings told the district court on three separate occasions that he was unhappy with his trial counsel and that they intimidated him or coerced him into taking the plea agreement. At the plea hearing and two subsequent motions to withdraw hearings, the district court asked Jennings to provide good cause as to why he should be able to withdraw his plea or good cause as to why new counsel should be appointed. Jennings failed to describe good cause for either at each hearing. Furthermore, each time the district court asked whether Jennings wished to go to trial with his current counsel or stand on his plea, Jennings opted to stand on his plea. Thus, the district court did not abuse its discretion in not allowing Jennings to withdraw from his plea agreement.

(b) Jennings Entered Into His Plea Agreement
Knowingly, Intelligently, and Voluntarily

Alternatively, Jennings argues that because he was under the influence of marijuana and K2 at the time he entered into his plea agreement, he could not have knowingly, intelligently, and voluntarily entered into his plea agreement. Jennings relies on *State v. Schurman*, 17 Neb. App. 431, 762 N.W.2d 337 (2009) to support his contention.

To support a finding that a plea of guilty has been entered knowingly, intelligently, and voluntarily, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). The record must also establish a factual basis for the plea and the defendant knew the range of penalties for the crime charged. *Id*.

The district court complied with each requirement. Jennings confirmed his understanding of the charges, the right to assistance of counsel, the effect of a guilty plea on his constitutional rights, and the possible penalties. Jennings affirmed to the district court that he was not under the influence of any narcotics. Jennings was able to explain why he wanted new counsel and the consequences of his choices, yet after his explanation he still told the district court it was his intention to plead no contest. Overall, Jennings' claim that his plea was not entered into knowingly, voluntarily, and intelligently is refuted by the record.

Furthermore, Jennings' reliance on *State v. Schurman, supra*, is misplaced. In *Schurman*, the defendant entered into a no contest plea without counsel for two Class I misdemeanors. At the plea hearing, the defendant told the court he did not understand what was going on, asked how he could get his belongings back, and asked the court to just put him in jail multiple times. After accepting the plea agreement, the State agreed with the county court that the defendant should

have counsel going forward and that counsel could always withdraw from the plea later. Yet, when the defendant's subsequently appointed counsel moved to withdraw the plea, the county court denied the motion. We held this was an abuse of discretion because the record exhibited the defendant's confusion, the defendant testified that he was diagnosed with bipolar disorder and had not slept the night before, and the defendant's confusion was acknowledged by the county court when it suggested that an attorney should be appointed for him.

Jennings' case is distinguishable from *Schurman* for two reasons. First, Jennings had counsel when he entered into the plea agreement, whereas the defendant in *Schurman*, did not. Second, although Jennings was unhappy with his counsel, he was an able participant in the proceedings and tried to make his case for why he felt coerced into taking the plea agreement at the plea hearing. The record here shows that Jennings was not confused. Rather, it shows that Jennings was aware of his rights and had the ability to weigh his decisions. When the district court asked him during the hearing on the first motion to withdraw if he wished to go to trial with his current counsel or stand by his plea agreement, Jennings decided to stand by his plea. In contrast, the defendant in *Schurman* did not appear cognizant of the proceedings against him, which is highlighted by him telling the county court on multiple occasions he was lost and did not know how to get his vehicle, clothes, and other personal belongings.

Jennings' reliance on *Schurman* is misplaced; thus, the district court did not abuse its discretion in denying Jennings' motions to withdraw his plea.

### 3. JENNINGS' MOTION TO WITHDRAW COUNSEL

Finally, Jennings argues that the district court erred by denying his motion to withdraw counsel. Specifically, Jennings argues that he should have been able to represent himself, and the district court erred by not allowing him to do so. However, Jennings failed to assign this as an error, so we will not address it. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (alleged error must be both specifically assigned and specifically argued).

### VI. CONCLUSION

For the foregoing reasons, we affirm Jennings' convictions and sentences.

AFFIRMED.